18 So.2d 327

**STATE v. STERLING et al.**

No. 37420.

April 17, 1944.

Rehearing Denied May 22, 1944.

Maurice R. Woulfe, C. C. Luzenberg, Sr., C. C. Luzenberg, Jr., and E. I. Mahoney, all of New Orleans, for appellants.

Eugene Stanley, Niels F. Hertz, J. Bernard Cocke, and George J. Gulotta, all of New Orleans, for appellee.

ROGERS, Justice.

Seven negroes, two women and five men, were charged by bill of information with the crime of armed robbery. Criminal Code, art. 64. On arraignment, Frank Poindexter, one of the defendants, pleaded guilty to the charge and his codefendants entered pleas of not guilty. Defendants, with the exception of Poindexter, who had pleaded guilty, were tried together.

The alleged victims of the robbery were two negro soldiers, Booker T. Timones and William J. Bailey. Timones was brought from Kelly Field, San Antonio, Texas, to New Orleans to testify in the case. Bailey, who had been discharged from the army at the time the case was called for hearing, could not be located, and the State elected to go to trial without his testimony. For want of sufficient evidence, the State abandoned the charge against the defendant, Clarence Mays, and the jury was instructed to return a verdict of not guilty as to him which it did. The jury also returned a verdict of not guilty as to the defendant, Earl Comeaux. As to the remaining defendants, August Sterling, Alfred George, Helen Barra, and Althea Hunter, the jury returned a verdict of guilty as charged. After their motions for a new trial were overruled, the defendants who were convicted were sentenced, Alfred George being sentenced as a second offender.

Appellants complain that the trial judge erred in overruling their motions for a new trial, which are similar in substance. Appellants allege that they were convicted solely upon the perjured testimony of Booker T. Timones, the prosecuting witness, and on no other evidence whatsoever. Appellants allege that the testimony given by Timones on the trial of the case was untrue and at variance with the statement which he made at the Fourth Precinct Sta-

tion on the night of the robbery. Appellants also allege that the testimony of Timones was at variance with a similar statement made at the same time by William J. Bailey, the other alleged victim of the robbery, which statement was in the possession of the State and was unknown at the time of the·trial of the case to appellants or their attorneys.

It is necessary to a clear understanding of the question involved on this appeal that the facts as developed by the testimony of Timones on the trial of the case should be set forth. We condense them narratively ·as follows: Timones, who for more than two and a half years has been a private soldier in the United States Army, was stationed at the Bomber Base at New Orleans in May, 1943. Having rented a home for his wife who was living in South Carolina, he went to the railroad station on the evening of May 13, 1943, to meet the train due at 5:15 o'clock on which she was expected to arrive. The wife of Timones was not on this train, nor was she on any train arriving at the station that night. When the last train had arrived, which was at 1:30 o'clock in the morning, Timones left the station in company with William J. Bailey, who was also a private in the United States Army and who had arrived on a train reaching the station at 12 o'clock. Timones met Bailey, whom he knew, in the waiting room set aside for colored people in the station where Timones stayed awaiting the arrival of his wife. At Bailey's suggestion, they went to the beer garden, known as the "Twenty-five", which is situated a short distance from the railroad station. When Timones and Bai-

ley entered the beer garden the four appellants and Earl Comeaux were sitting together at a table drinking beer. Timones bought a soda and played a record. A negro, Frank Poindexter, who afterwards. took part in the robbery armed with a pistol with which he struck Timones on the head, introduced Timones and Bailey to. the appellants. Timones and Bailey did not sit at the table and after talking to the appellants for a few minutes, left the beer parlor. They were followed from the place by Helen Barra and Althea Hunter,. who intercepted them at the street corner and invited them to go to a room. Timones. and Bailey declined the invitation and continued to walk up the street accompanied. by the girls. When they reached a point about 15 feet away from the beer parlor, they were pulled into a narrow alley by the girls and immediately held up by the negro armed with a pistol, assisted by the appellants, Sterling and George, who had followed them into the alley. The negro (Poindexter), who was armed, fired a shot in the alley and struck Timones on the head with the gun. Sterling and George then kicked Timones and Bailey and took their money and all the assailants then ran out of the alley. Under the orders of the negro (Poindexter), Althea Hunter pulled off the shoes of Timones looking for money. After his assailants ran out of the alley, Timones put on his shoes and went to a nearby filling station where he informed the white man in charge of the hold-up. The filling station attendant telephoned the police station, and shortly thereafter police officers arrived at the filling station and took Timones and Bailey to

the Fourth Precinct Station where each made brief statements of the robbery. At the time Timones made the statement, his head was bleeding and hurting him and he wanted to go to the hospital.

As a result of the investigation conducted by the police department, the appellants were arrested a few weeks after the occurrence of the robbery and Timones was summoned to detective headquarters for the purpose of identifying the appellants which he did. At that time it appears that Timones made another statement. This statement, although referred to, was not used on the trial of the case. All the appellants also made alleged exculpatory statements which, without objection, were offered in evidence by the State.

On cross-examination, Timones was asked by counsel representing Althea Hunter whether he had made a written statement at the police station on the night of May 13, 1943, when the robbery occurred. He answered that he had made a statement which was taken down in writing at the police station. Counsel for appellant then called for the statement, which counsel for the State procured from the police station, and turned over to counsel for the appellant. Timones was then vigorously cross-examined by counsel representing all the appellants on this statement, which was read several times to the jury.

In addition to the testimony of Timones and the statement which he made to the police on May 13, 1943, there was in evidence for the consideration of the jury the alleged exculpatory statements made by the appellants in which they purported to give their version of the robbery.

Testimony was also given by two police officers who were called as witnesses by the defendants and examined as to the statement made by Timones on the night of the robbery. One of these officers, who reached the scene shortly after the robbery, fired a shot at a fleeing negro, who dropped his hat. The hat was later identified as the property of Frank Poindexter.

The statement of Timones was made in the manner and form of the usual preliminary statements taken from a complaining witness at a police station. It consists of only twenty lines and is obviously an incomplete account of the robbery hastily taken down by a police officer who did not go exhaustively into the circumstances surrounding the crime. The statement does show, however, that two negro women and three negro men were involved in the robbery and that the complainant Timones could positively identify them. In his testimony on the trial of the case, Timones gives a particularized account of the robbery; he goes into detail as to the facts connected with the crime and particularly the part taken therein by each of the appellants. The testimony of Timones is corroborated on many material points by the alleged exculpatory statements of the appellants themselves.

█ In the face of the showing which we have hereinabove set forth, appellants' contention that the record is barren of any evidence to sustain their convictions is not well founded.

The question of whether in view of the statement made by Timones in the police station, he deliberately perjured himself in testifying on the trial of the case to bring about the conviction of the appellants was a question for the jury and not one for this Court to determine. In criminal prosecutions it is within the exclusive province of the jury to determine the credibility of the witnesses and to weigh and give effect to the evidence.

The jurisdiction of this Court in criminal cases is confined to questions of law itself. The Court cannot review questions of fact touching the guilt or innocence of the accused, as to which the jurors are the sole judges.

We find no error in the action of the trial judge in refusing to grant the motions for a new trial based on the charge that the statement made by William J. Bailey on the night of the robbery at the Fourth Precinct Station contradicts the testimony given by Timones, the prosecuting witness. It is alleged in the motions that it was not until after appellants were found guilty that they ascertained Bailey had made the statement which is set forth at length in the motion for a new trial filed on behalf of Althea Hunter. This allegation is incorrect. No showing whatever was made to support the allegation by evidence on the motion for a new trial. The fact that Bailey had made the statement was brought out on the trial of the case in the examination of Sergeant John C. Cruso and Desk Sergeant Eugene Geary, who were called as witnesses by the appellants themselves. From which it clearly appears

that appellants and their counsel knew prior to the submission of the case to the jury that Bailey had made the statement and therefore counsel for appellants were in a position to ask for the production of and to use the statement, if it was legally possible to do so, prior to the completion of the trial. In these circumstances, appellants' allegation that the unsworn statement made by Bailey constituted newly discovered evidence is not supported by the facts.

To authorize a new trial on newly discovered evidence, the proposed evidence must not only be newly discovered, but it must be shown that it could not have been discovered by use of reasonable diligence before the verdict. State v. Saba, 203 La. 881, 14 So.2d 751.

The statement made by Bailey is substantially the same as the statement given by Timones on the night of the robbery. The unsworn statement made by Bailey is clearly hearsay and was not admissible as original evidence on the trial of the case. Neither is it admissible to impeach the testimony of Timones if, in fact, it is contradictory of the testimony, which it does not appear the jury found to be the case in considering a similar statement made by Timones.

It was suggested in argument by counsel for one of the appellants that the statement of Bailey in the event a new trial was granted could be offered in evidence and used as a basis for cross-examining Timones, because he was present when Bai-

ley made the statement. The suggestion, however, does not include the explanation of why counsel, who had knowledge of the statement as shown by the record, did not call for it and attempt to use it on the trial of the case. But there is no merit in the suggestion.

The credit of a witness may be impeached by showing that a statement made in his presence by another and which was assented to and adopted by him as his own are contrary to what he has testified to at the trial, but a statement of a third person, not assented to, by the witness, nor replied to by him, cannot be shown, unless it is made at a time and under circumstances when it is proper for the witness to speak out and contradict the statement. 70 C.J., Witnesses, pp. 1070–1075, § 1272.

There is no showing that Timones assented to or adopted as his own, or even heard, the statement made by Bailey, nor is there any reason why he should have spoken out and contradicted the statement, even if he had heard it. As we have hereinabove observed, the statement made by Bailey is substantially the same as the statement made by Timones which was presented to and considered by the jury.

Counsel for appellants have cited a number of cases from this and other jurisdictions, but we do not find that the cases are applicable to the question involved in this case.

For the reasons assigned, the convictions and sentences appealed from are affirmed.

ODOM, J., absent.